**SIGNED THIS: December 19, 2007**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROADRUNNER DELIVERY, INC., | ) | No. 07-80773 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CHARLES E. COVEY, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-8113 |
| | ) | |
| EGOLF JOHN HACKETT, | ) | |
| | ) | |
| Defendant. | ) | |

### O P I N I O N

This matter is before the Court on the Motion by the Defendant, Egolf John Hackett (HACKETT), to dismiss the adversary complaint filed by Charles E. Covey (TRUSTEE), Chapter 7 Trustee of the estate of the Debtor, Roadrunner Delivery, Inc. For the following reasons, the Court determines that the avoidance claim asserted by the TRUSTEE is a

prepetition claim against HACKETT that was discharged in HACKETT'S Chapter 7 bankruptcy case. Accordingly, the Motion will be granted.

**BACKGROUND**

Roadrunner Delivery, Inc. ("RDI") operated a delivery service in Peoria from January 1, 1998, to March 31, 2007. HACKETT is the sole shareholder, officer and director of RDI. HACKETT and RDI each filed for Chapter 7 relief on the same day, thirty-one minutes apart. HACKETT filed at 12:12 p.m. on April 11, 2007 and RDI filed at 12:43 p.m. that same day. HACKETT received a discharge on July 23, 2007. In addition to serving as Trustee in RDI's case, the TRUSTEE also served in the same capacity in HACKETT'S case.

The TRUSTEE'S complaint seeks to avoid as fraudulent under Section 548(a)(1)(B), payments totaling $6,753.95 made by RDI to HACKETT or for his benefit within the two-year period preceding RDI's petition. In his motion to dismiss the complaint, HACKETT asserts that because the transfers in question occurred prior to his bankruptcy filing, the TRUSTEE'S avoidance action is a prepetition claim against him that was subject to being discharged in his case and was, in fact, discharged on July 23, 2007.

Arguing that the avoidance action is a postpetition claim against HACKETT, the TRUSTEE points out that because HACKETT'S filing preceded RDI's filing, neither RDI's bankruptcy estate nor a trustee of such estate existed at the time of HACKETT'S filing. "You can't have a claim without a claimant" contends the TRUSTEE. Notwithstanding the nonexistence of the claimant, HACKETT maintains that when he filed his petition the claim was a "contingent" claim as defined in the Bankruptcy Code.

**ANALYSIS**

A Chapter 7 discharge serves to discharge the debtor from all debts that arose before the date of the order for relief. 11 U.S.C. § 727(b). The term "debt" means liability on a claim. 11 U.S.C. § 101(12). In pertinent part, the term "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The definition of "claim" is intended to be as broad as possible so that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case, in order to permit the broadest possible relief. House Report No. 95-595, 95th Cong., 1st Sess. 309 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 21 (1978); *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990).

The parties focus on whether the existence of a claim should be determined under the "conduct theory" or the "accrual theory." The majority of courts follow the conduct theory, which determines the date of a claim by the date of the conduct giving rise to the claim. *In re Parker,* 313 F.3d 1267 (10th Cir. 2002); *Grady v. A.H. Robbins Co., Inc.,* 839 F.2d 198 (4th Cir. 1988). A minority use the accrual theory, under which the date of a claim is determined by the state law under which liability for the claim arose. *Matter of M. Frenville Co.,* 744 F.2d 332 (3rd Cir. 1984). The Seventh Circuit has not addressed the issue. The accrual theory has been rejected by at least one bankruptcy court in the Central District of Illinois. *See In re Bonnett,* 158 B.R. 125, 127 (Bankr.C.D.Ill. 1993) (Altenberger, J.).

Some courts use a third theory in the context of products liability claims, referred to as the "prepetition relationship" theory or the "narrow conduct" theory. *In re Chance Industries, Inc.,* 367 B.R. 689, 699 (Bankr.D.Kan. 2006). Under this theory, a claim arises at the time of the debtor's conduct giving rise to the liability only if the claimant had a specific prepetition relationship with the debtor at the time the conduct occurred, or the claim was within the fair contemplation of the parties. *Id.; Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft Corp.,* 58 F.3d 1573, 1577 (11th Cir. 1995); *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268 (5th Cir. 1994); *In re Jensen,* 995 F.2d 925 (9th Cir. 1993). The prepetition relationship requires some contact, exposure, impact or privity, between the debtor's product and the claimant. *Epstein,* 58 F.3d at 1577. In this Court's view, personal injury tort claims are a unique animal and the prepetition relationship theory, developed in the context of those claims, should be limited to that arena.

In this Court's view, the accrual theory is inconsistent with the language of Section 101(5)(A) that defines claims to expressly include rights to payment that are "contingent" and "unmatured." As defined, the term includes not just present, existing rights to payment, but also merely potential rights that may or may not ripen into enforceable rights in the future. To the extent that the accrual theory limits claims to those with present enforceability as of the petition date, it improperly excludes contingent and unmatured claims and must, therefore, be rejected. *See In re Leckie Smokeless Coal Co.,* 99 F.3d 573 (4th Cir. 1996) (because unmatured and contingent rights to payment are claims, rights to statutory premiums not yet accrued and only assessable at some future time constitute claims).

Additionally, as set forth in *Parker*, the conduct theory is more consistent with the predominant policy of providing the broadest possible relief to debtors as well as the extremely broad definition of "claim" that was adopted as part of the Bankruptcy Code. This Court is of the opinion that the conduct theory is the better approach. In addition to focusing upon when the alleged misconduct took place, however, some courts also consider whether the potential claimant and the debtor had a prebankruptcy relationship. *Bonnett,* 158 B.R. at 127. Here is where the theory collapses, argues the TRUSTEE, as there was no prebankruptcy relationship between HACKETT and the TRUSTEE. Whether a prebankruptcy relationship should be properly considered to be part of the inquiry under the conduct theory appears to be unsettled. Even if it is a valid consideration, under the particular circumstances of the case at bar, the TRUSTEE'S "lack of existence" does not compel a determination that his claim is a postpetition one not subject to discharge in HACKETT'S case.

Although the TRUSTEE may not have been in place when the transfers occurred, RDI's creditors were. The TRUSTEE'S avoidance action alleges that HACKETT received or benefitted from fraudulent transfers when RDI made payments in exchange for which it received less than reasonably equivalent value. That cause of action under 11 U.S.C. § 548(a)(1)(B) is nearly identical to the state law cause of action under the Uniform Fraudulent Transfer Act (UFTA). *In re Canyon Systems Corp.,* 343 B.R. 615, 634 n.15 (Bankr.S.D.Ohio 2006). The cause of action under the UFTA for avoidance of a fraudulent transfer is assertable by any creditor of the transferor. 740 ILCS 160/5 and 160/6(a). Any creditor of RDI could have sued HACKETT to avoid the payments made by RDI that he received or benefitted from at any time after the payments were made.

5

Thus, RDI's creditors held claims against HACKETT, that arose prior to his bankruptcy filing, for avoidance of the payments in question as fraudulent transfers. Those prepetition claims were discharged when HACKETT received his discharge. From HACKETT'S perspective, his liability for the value of the transfers in question, if avoidable as fraudulent, arose before he filed his petition. The TRUSTEE represents and acts for the benefit of those same creditors who held prepetition UFTA claims against HACKETT. *See Dechert v. Cadle Co.,* 333 F.3d 801 (7th Cir. 2003) (Chapter 7 trustee is the representative of and has a fiduciary obligation to the debtor's unsecured creditors); *In re Hansen,* 368 B.R. 868, 879 (9th Cir.BAP 2007).

It is true that the TRUSTEE was not appointed in RDI's case until after HACKETT filed his petition and that the avoidance claim under Section 548 could not have been brought until after RDI filed its petition. Nevertheless, HACKETT'S liability to the creditors of RDI for the avoidable transfers predated his filing. Those creditors held the same "right to payment" that the TRUSTEE now asserts.[1] It would be incongruous if the prepetition avoidance claims of RDI's creditors were discharged in HACKETT'S case, but the TRUSTEE'S claim for avoidance of the same transfers for the benefit of the same creditors is not dischargeable. HACKETT may not have had a prepetition relationship with the TRUSTEE, but, in this Court's view, the triangular relationship among HACKETT, RDI and RDI's creditors, whom the TRUSTEE represents, satisfies the relationship test, if applicable.

---

[1] If one of RDI's creditors had successfully prosecuted a UFTA action against HACKETT and avoided the transfers, the TRUSTEE would have no claim under Section 548 and HACKETT would not be subject to double liability.

The TRUSTEE relies upon *In re Hoffinger Industries, Inc.,* 307 B.R. 112 (Bankr.E.D.Ark. 2004) and *Chance Industries, supra,* for the proposition that a claim cannot exist without a claimant. Those cases dealt with tort claims involving postpetition injuries and are readily distinguishable. The TRUSTEE also relies upon *In re Enron Creditors Recovery Corp.,* 376 B.R. 442 (Bankr.S.D.N.Y. 2007), where the court noted that a preference avoidance claim under Section 547 does not arise until the bankruptcy case is filed. Likewise, preference actions are not analogous to fraudulent transfer avoidance claims. Here, all of the elements of the fraudulent transfer avoidance claim had occurred and were provable before HACKETT filed his petition.[2]

The TRUSTEE also relies upon the definition of "creditor" as an "entity that has a claim against the debtor" for the proposition that there cannot be a claim if the claimant does not exist prepetition. As pointed out by HACKETT, "claim" is defined without reference to the term "creditor." The TRUSTEE conflates the two terms. The definition of "creditor" does not supplement or modify the definition of "claim." The TRUSTEE'S argument contradicts the broad meaning of "contingent" claim as including unaccrued rights to payment.[3]

Moreover, as pointed out by HACKETT, the court in *Bonnett* determined that a creditor held a prepetition contingent claim even though the potential right to payment could not accrue until the debtor filed his bankruptcy petition and his bankruptcy trustee obtained a recovery from the creditor on a preference claim. *Bonnett's* reasoning supports

---

[2] In this respect, the avoidance claim is completely rooted in HACKETT'S prebankruptcy past.

[3] A "contingent claim" is defined as "one which has not accrued and which is dependent on some future event that may never happen." BLACK'S LAW DICTIONARY (5th Ed.).

the conclusion here, that the contingency of RDI's bankruptcy filing was not so remote as to remove the TRUSTEE'S claim from the broad scope of a contingent claim under Section 101(5)(A).[4]

The Court is cognizant that the result reached here could mean, in some instances, that a trustee whose transfer avoidance claim is discharged in the transferee's bankruptcy case filed well before his appointment, will not have the opportunity to file a proof of claim in the case and share in a distribution of assets.  In this Court's view, however, as between the debtor's interest in the broadest possible discharge and the trustee's interest, as a claimant, in sharing in estate assets, the debtor's interest outweighs that of the trustee.

For the foregoing reasons, the Motion to Dismiss will be granted.  This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

### 

---

[4] Although the exact identity of RDI's potential bankruptcy trustee may have been unknown, the certainty that, upon RDI's filing, a trustee would be appointed and would have avoidance powers under Section 548 is indisputable.